In re STOKES, John Patrick Stokes, appellant, appearing pro se, Brian Audette, appearing for appellee. Mr. Stokes on the video, good morning. Good morning. Please come to the lectern. So we can see you. Thank you. Thank you. Thank you for allowing me oral argument too, sirs. Would you like to would you like to reserve some time for rebuttal? I think about three minutes. I'm going to go through the record as you stated, but I want to give you a little background that brought us here and raise some points that I think need to be considered. So perhaps three minutes and I'll get through my talking points here and then I'll take a break and let Mr. So, but I don't think it's going to take the full 10 minutes, 15 minutes, but if I get close and because of questions you might have, just let me know. All right. Well, I want to thank you for allowing me to have an oral argument. This began about 15 years ago. I owned a radio station that had the largest undeveloped land in the city of Kalispell, 160 acres of commercial property, valued about two million, $22 million. I owed about 600,000. All of a sudden, everybody wanted it and nobody wanted to pay for it. My highway department, city of Kalispell Airport and property owners that wanted to take it and acquire it. Local family across the street wanted to steal it all without payment. They made up two lawsuits and prevailed. The first one I lost 120 acres without any compensation whatsoever. That wasn't good enough for them. So they sued me again on a bovis slander claim. They made it up. They sued two corporations I hadn't owned for eight years and they got a $3.8 million default judgment against me. They transferred it to me personally. I wasn't allowed to answer, do anything. I appealed it because the $3.8 million would never stood up in Montana. Slander claims have a maximum of 3% if they're legitimate. I'm not worth 160 million. They attempted to levy on those. I filed for bankruptcy protection in March of 2009 so my appeal at the Supreme Court could run its case and get thrown out. We were paying all our debts. We weren't bankrupt. Two weeks later, the trustee moved to convert me to Chapter 7. He intimidated my attorney to the point where he quit and made it known to every attorney in the state he wanted me and nobody would represent me. To this day, they still won't. I was converted on September 21st, 2009. I was never notified on September 24th. They sent in 30 SWAT guys, fully armed, to take my station with force and they attempted to murder me that day. I didn't take the bait. They set up a Randy Weaver type situation and I didn't take the bait. I walked out and lived for another day, but they took immediate possession. I was not allowed to appeal. I wasn't allowed to stay. Trustee also wanted to make me homeless. I had a life estate on the residence, as we give it to our daughter 10 years prior. He threatened her with prison if she didn't turn it over to the court for liquidation. The trustee filed an 11 U.S.C. 363-F motion in the adversary proceeding, which is in the file, against my daughter, myself, and then the purported lien holder, HFC. The trustee advised me to cease making payments to HFC because he was going to disallow the lien. It was clearly pled. You can see that. It was in the adversary proceeding by Harold Dye. HFC chose not to answer, respond, or dispute for any of the documents that were filed. Trustee sold the residence free and clear to my wife, together with all the personal property, as he paid cash. No one objected. No one appealed. Later, Jason Henderson, the attorney now representing LSFA, along with a whole bunch of others, filed another proof of claim, and this time requested state relief on the same disallowed lien HFC challenged. HFC was challenged, and Jason Henderson then presented the disallowed note, but it is now endorsed to HFC 3, a totally complete separate corporation from HFC 2. We pointed it out. He withdrew the motion. The bankruptcy closed. Both proofs of claim and liens were disallowed. No funds were distributed to either. No one appealed. A year later, a company called Caliber, a company owned by LSFA, began making demands that I and my wife pay $249,000 or face foreclosure, and stated HFC 2 sold the disallowed lien to LSFA. It's important to note HFC 2 and 3 went out of business in 2009, and Caliber, HFC 2, and HFC 3, and LSFA all use the same address today. Henderson and LSFA began foreclosing on the house we bought free and clear from the trustee on a disallowed lien. We filed suit in Lake County District Court for mortgage fraud, among other allegations. The court would not grant an injunction, and Pamela, my wife, had to file 13 to stay. LSFA, through their attorney, Erica Peterman, another attorney of LSFA, made a proof of claim to lift the stay and used the same bank disallowed blank note of HSBC. Pamela challenged, and it was set for hearing. Prior to the hearing, LSFA, through counsel Erica Peterman, provided a copy of the note in LSFA's possession. However, LSFA, between submitting the proof of claim and the hearing date, assigned all interest back to HFC 2 in April of 2015. That's the fourth note, number four, it's noted. LSFA made no effort to answer or deny the stay complaint. A year and a half later, without appearance or answer, the Stokes got defaults of approximately $4.6 million, and the defaults were entered. Stokes sent the default order for the judge to sign. The judge ordered Stokes an abeyance. LSFA would not cease the trustee sale, and Stokes once again was forced to file for bankruptcy. All parties were notified of the complaint. The complaints and the defaults became the estate property of Pamela Stokes and John Stokes. Judge Manley, Lake District Court, knowing full well, and the other parties, knew of the bankruptcy filings, and they set a hearing to set aside the default, and Judge Manley made ex parte contracts with the defendants. Within 24 hours, and before service by mail, they had a motion dismissed, and summary judgment before the district court set for August 10th, during my bankruptcy, and it's a complete violation of 363 stay. I didn't attend the hearing because of the stay. The trustee tricked me into believing the creditor's meeting of August 12th was postponed until September, and I didn't attend. He moved the next day to dismiss, and notified the defendants they were free to foreclose on me on August 18th. LSFA, through First American, allegedly conducted a trustee sale on the same disallowed note that they no longer own and held by HFC2. First American, the assigned trustee, had no standing whatsoever to ask for LSFA and had not owned the forged note since 2015. Went through the appeals and no avail. I sued them in federal court. The court dismissed for subject matter jurisdiction. They attempted possession last year, and I filed the current action. LSFA filed a motion to lift the stay, and I objected. I objected, and I sent for a hearing on September 17th last year. Together with subpoena witnesses and exhibits and the affidavits of fraud and forgery, I was denied in all respect to have a hearing on that day. Pretty much got the bums rushed. Just like in here, I'm talking to a video screen. Nobody was present. I was in and out in minutes. There was no motion in the room. All parties were notified. Ownership was never established, and hence, to the contrary. The court dismissed it. I filed for reconsideration. The court then orders the case closed without any action. I filed an appeal. The court then decides to reopen it and address the issues I have on appeal here today. It reopens a demand series on the issues of appeal. My understanding, once the case is closed, the court cannot come back in and address the issues that are on appeal as they are here today. Once again, I was denied me a hearing and witnesses on that day. Yes, I've had to file against these criminals a lot of times. I let the court know that if you Google HSBC, HFC23, HFC3, LSF8 on Google, under mortgage and bankruptcy fraud, you'll get 362,000 hits. Yeah, I filed for bankruptcy three or four times to bring these people to justice and get the house in my name. This matter was over in 2009 when the lien was disallowed and cannot be arrested. The court completely settled this in Blenheim and HSBC, of all people. What they do, they get caught, they just assign it to somebody else, and somebody else gets the hell visit on them. This was over in 2009. My wife bought it from the court free and clear. HSBC and HFC lien were completely disallowed. So I request a remand with instructions to disallow the lien and to hold a hearing to determine the amount of damages Stokes may be entitled to. I think I am. All the other issues are part of the record, and I believe, like you said, will be reviewed to no one quite familiar. I do find it odd that LSF8, and I've owned a lot of apartment buildings and had to evict a lot of tenants, unfortunately, has had their seeking possession of a house they allegedly own. They fired America's foremost criminal defense attorneys, Perkins Coy, to evict a little old tenant here in Montana. One of their clients was just fined $45 million for mortgage fraud. They're familiar with mortgage fraud. Again, I point out, LSF8 has not had any interest in the fort's note since they assigned it back to HFC2 in April 2015 under penalty of perjury. The affidavits on file prove the forgeries. They've defaulted all claims in Lake County Court, Federal Court, Bankruptcy Court, defaulted on the interrogatory's request for admissions, and failed to answer the adversary proceedings I had on September 17th. If I have any time left, I reserve it, and I'll answer any questions you may have. Okay, thank you. I think you have about five minutes left, so thank you.  Mr. Odette. Thank you, Your Honors. Good morning. Brian Odette from Perkins Coy LLP in Chicago, appearing on behalf of Appelli LSF8 Master Participation Trust. I just want to address some of the comments that Mr. Stokes made, which are the same arguments and comments he has made throughout the bankruptcy proceeding, both the current proceeding that brought us here today and past proceedings over the years. As he suggested, he has filed numerous bankruptcy proceedings over the years, as Judge Pappas in the Bankruptcy Court recognized. All of the allegations that he has made occurred years ago in other additional bankruptcies that he may have filed. To the extent he had any rights to pursue those claims, he had every opportunity to do so in his prior bankruptcy cases. They were all dismissed, and none of his claims were adjudicated in his favor. He has continued to pursue those claims, and I believe he made the comment just now that he filed his current bankruptcy yet again to bring them, meaning my client, to justice. He seeks to litigate against my client regarding alleged mortgage fraud, false forged documents. These are the same arguments he has made over and over again. And what is important to note here, as Judge Pappas recognized in the Bankruptcy Court, is that the Bankruptcy Court is not the forum to raise these claims and litigate these claims. He has an opportunity to litigate these claims in the appropriate state court. Judge Pappas recommended he do so. My client acknowledged on the record at the hearings in the Bankruptcy Court that he would have, Mr. Stokes, would have every opportunity to allege his claims in the state court eviction action. That's currently pending in Montana State Court. It's been fully briefed. Mr. Stokes has made the same arguments he is making today, and he's made throughout the bankruptcy case, and he has a forum in which to litigate his claims. That matter is currently in summary judgment. I'm not handling the matter. My understanding is it is awaiting final ruling by the Montana State Court. So Mr. Stokes, as Judge Pappas had recommended, has and is getting his day in court versus my client. OK, now turning to the issues we are here for today, it is solely with respect to the Bankruptcy Court's order authorizing relief from the automatic state to permit my client to proceed with its eviction action in state court. And that is all. Earlier on in this case, because Mr. Stokes' notice of appeal was unclear as to which of the Bankruptcy Court orders he was appealing, the panel entered an order indicating that the appeal would be deemed one of the Bankruptcy Court's lit stay order. And that if Mr. Stokes had any desire to challenge any other order of the Bankruptcy Court, including the Bankruptcy Court's order dismissing the bankruptcy case, then he would be given an opportunity to do so. There was a date certain by which he had an opportunity to file a notice of appeal of that order, and he chose not to do so. And I think, as Your Honor can see from the record, Mr. Stokes is perfectly capable and intelligent enough to file pleadings. He's done so repeatedly, obviously, in the Bankruptcy Court and in this court. He chose not to pursue an appeal of the order dismissing the bankruptcy case. The bankruptcy judge, Judge Pappas, entered relief from the automatic stay under Section 362 D1, D2, and D4. And I understand, based on the subsequent briefing in this case regarding mootness, that the panel understands this appeal may not be moot due to the Section 362 D4 relief that Judge Pappas entered in that case. However, the appeal is unquestionably moot with respect to the 362 D1 and D2 relief that Judge Pappas entered. The case was dismissed. Why don't you address the D4 relief? Why don't you go ahead and address the D4 relief since that is the issue? Yes, Your Honor. I would obviously respectfully submit that the appeal is moot and should be dismissed with respect to the Section 362 D1 and D2 relief. I will concede, based on the precedent cited by the panel, that the Section 362 D4 relief, that aspect of the appeal may not be moot. That said... Let's get to the substance of that. Yes, Your Honor. What's the basis for granting in-rem relief to your client in this case? In this case, Your Honor, Judge Pappas made it very clear that there was a pattern and a scheme that Mr. Stokes undertook over the years in repeated bankruptcy filings solely to prevent my client from exercising its state court rights to first foreclose and now to seek possession of the real estate through the current proceeding that's pending in Montana State Court. The record is very clear, and Judge Pappas ruled and entered that relief based on Mr. Stokes' own acknowledgements and own admissions in which he stated repeatedly before the court he was filing these cases, as he stated again today, to bring my client to justice. All right, but Section D4 provides for a relief from stay with respect to an act against real property under Subjection A by a creditor whose claim is secured by an interest in such real property. So how does that apply to your client who, as you stated on the record at the bankruptcy court, is not a creditor but an owner? I will say two responses to that, Your Honor. First, the language in the statute does indicate secured creditor. Yeah. Okay. I obviously have to concede that point. Right. Now, whether that necessarily means a client in my situation can never get Section 362 D4 relief, I'm not sure I necessarily agree with. Interpreting the statute in that manner and preventing my client in this case from getting Section 362 D4 relief leads to respectfully an absurd result because what it does is it gives a debtor more power and more rights under the bankruptcy code when the property has already been foreclosed. Pre-foreclosure, 364 D4 relief unquestionably would be available. But once foreclosure occurs, an interpretation that it's only available to secured creditors means a debtor can then repeatedly file after the debtor has lost title to the property and there'd be no relief under Section 362 D4. And so an owner at that point that has already foreclosed that was clearly a secured creditor, as the statute states, would then be unable to obtain that relief and have to continue to deal with additional subsequent filings. So what if the owner is a stranger to the bankruptcy, a third party who buys the property at the foreclosure sale knowing it came out of a bankruptcy and that these were all the issues? Does that person, that third party purchaser, get D4 relief too? I think that's a very different situation. I think that's a great point, Your Honor. I think it would be a very distinguishable situation because in that situation you wouldn't have an owner who had been subjected to repeated bankruptcy filings. But they might argue it's just all part of the same course of conduct. It's the same thing because we bought it from the foreclosing creditor. So I understand that certainly that argument could be made. And certainly if I were representing an owner in that situation, I would make that argument. But I do believe that situation is distinguishable from a situation here where you have my client who has been the secured creditor throughout this process and was prevented in numerous bankruptcy cases as a secured creditor from foreclosing. Ultimately was able to foreclose and now is continuing to be thwarted by additional bankruptcy filings and to have a result to suggest under those circumstances that my client has no rights under 362 D4 I think would be an unfortunate interpretation of the statute. You said it would be absurd. Is that really right? I mean, once you're the owner, you have access to rights under state court remedies, the state court and statutory rights that are much more powerful and much more expeditious than a foreclosing lender, right? I mean, couldn't Congress have logically said, well, once you're the owner, you've got these other bundle of state rights and that ought to be good enough. I'm not sure I would distinguish quite that much between the state rights and the expeditious rights that they have. I'm not a if I do do commercial foreclosures, I do not do repossession or eviction litigation. But I will tell you just based on this case, that eviction case has been pending for quite some time. And Mr. Stokes likes to file pleadings and likes to appeal. And so I would respectfully disagree that that process, particularly under these egregious circumstances, can or will play out any more expeditiously for the owner than would a foreclosure in state court. I will also note regarding that point on Section 362 D4, there's obviously precedent from the bankruptcy appellate panel that such relief is unavailable to an owner. And I can't dispute that. That obviously exists. And I would point the panel to the case Ellis v. U, In re, Ellis, 523 B.R. 673, bankruptcy appellate panel, 2014. That case says that, that the relief under D4 is not available to an owner. I don't think this panel is bound by that decision. But I will note that Judge Pappas, the bankruptcy judge here, is the author on behalf of the bankruptcy appellate panel of that opinion. So Judge Pappas was well aware of the law and 362 D4 and his interpretation of it when he granted my client Section 362 D4 relief. And I find a hard time believing that the judge simply forgot about it. I think obviously Judge Pappas is well aware of his prior decisions and his precedent, yet still under these egregious circumstances granted my client the relief. So I would respectfully request, Your Honor, that at least certainly with respect to the D1 and D2 relief, the appeal is moot, should be dismissed. And the panel simply doesn't have jurisdiction to entertain that aspect of the court's ruling. And I would also respectfully request that the court affirm Judge Pappas' grant of stair relief pursuant to Section 362 D4 as well. Okay. Thank you very much. Mr. Stokes, you have about five minutes left if you wish to respond. Certainly. Thank you. I have to have reading glasses so I really can't see them. Your face is very well right now, but thank you for allowing me to respond. I'm not so familiar with what D4 credit relief is, but I'm kind of old school that forged assignments are void. And Mr. Audet keeps bringing up that when Mr. Stokes brought this up. There's never been any findings of fact or conclusions of law, any ruling whatsoever that the assignments are legitimate. To the contrary, every time I file against these people, they default, they admit, they don't respond. I subpoenaed the parties of this forgery, and they didn't even show up. I wasn't allowed to call. My understanding of a basic motion in REM, you've got to name all parties and bring the owners into the courtroom. My wife wasn't named. She owns the property. She bought the title from the bankruptcy court. This case should have been over in 2009. But what they do, they just keep forging new assignments and new assignments and new assignments. You get close to catching them, somebody else owns the assignment. And as far as litigating in state or federal court, I told you the federal court wouldn't allow me. It says no subject matter jurisdiction. Now what these guys have done in state court when I've won, then they've got the default set aside. And oh my God, I defended myself. I filed pleadings. I litigated. Every American family man, husband, would do everything in his power to stop criminals from taking his home. And I will still continue to do that. But the bankruptcy court is the only forum I have to bring people who violate the bankruptcy code, commit bankruptcy fraud, felonies under the code, to justice. Certainly for violating the automatic stay, this court certainly has jurisdiction. But what else did they do? They filed false pleadings saying they were the owner in state court and said, we want to declare Stokes a factious litigant. So therefore, now I'm forbidden to go into state court. So they say, well, you've got other opportunities. They know that's not true. And for them to say it's waiting on ruling in state court for summary judgment, I asked for oral argument. And they can't do anything because I filed, I removed it to federal court under the RICO statutes. They haven't answered. They've admitted everything. Everything. And it's been over a year. They haven't even filed an answer. They admit what's before this court. They admit what's before the federal court. And they dismiss it out of the hand, say it's a state court issue. Well, I have a file, an appeal, a petition to the U.S. Supreme Court. And that is pending right now. So to say this is pending ruling in Lake County District Court for summary judgment, which I have requested oral argument on, and I'm going to subpoena these guys and get them there if we don't wrap this up here, and we're going to get to the bottom of this forgery. But I'm old school that I think perjury under oath, submitting false documents to a federal court, have repercussions. And that's the conclusion of my rebuttal. Okay. Thank you very much. Thanks to both sides for your good arguments. The matter is submitted. Thank you. Thank you very much. And the court, next case, please.
judges: Faris, Brand, Hercher